TOWN OF HINGHAM vs. B. J. PENTABONE, INC. & another (and a companion case[1]).

Plymouth.   May 8, 1968. — June 24, 1968.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Surety. Bond,* Surety, Contractor's bond. *Contract,* What constitutes, With municipality, To comply with decision of board of appeals. *Zoning,* Material removal, Enforcement of zoning.

A compensated surety on a bond given to a town by a contractor to ensure performance of the conditions of a decision by the board of appeals under the town's zoning by-law, permitting the removal of fill from private land owned by applicants for the permit, was not discharged by an amendment of the decision, enacted without the surety's knowledge or consent, allowing removal of a greater amount of fill and changes in grading for the benefit of the contractor but not modifying the original decision in material aspects; nor did the surety show that the amendment caused it any loss which would reduce its liability on the bond. [541–542]

A contractor, who dealt directly with the board of appeals of a town with respect to the removal of fill from private land owned by applicants for a removal permit from the board under the zoning by-law, and agreed to comply with the conditions of the board's decision granting the permit and furnished a performance bond running to the town in compliance therewith, and who began work under the original decision and worked under a modification thereof which benefited him, was held to have entered into a contract with the town apart from his contract on the bond. [542]

A town was entitled to maintain an action against a contractor on a contract between him and it whereby he agreed to comply with the conditions of a decision of its board of appeals under its zoning by-law, granting a permit for the removal of fill from private land owned by the applicants for the permit, to recover the reasonable cost to the town of doing work specified in the conditions of the board's decision and not performed by the contractor, notwithstanding the availability of equitable relief under G. L. c. 40A, § 22. [542–543]

CONTRACT.   Writ in the Superior Court dated November 16, 1962.

---

[1] The companion case is Building Commissioner of Hingham vs. James T. Toomey & others.

BILL IN EQUITY filed in the same court on April 8, 1965.

The action and suit were heard by *Lurie*, J., on the reports of an auditor-master.

*Stephen T. Kunian* for B. J. Pentabone, Inc. & another (*Maurice F. Maher*, for James T. Toomey & another, with him).

*John R. Hally* (*Robert L. Dancy* with him) for the Town of Hingham & another.

SPALDING, J. This is an action of contract which was tried together with a bill in equity. The law case was referred to an auditor (findings not to be final) who also sat as master in the equity case.

The declaration in the law case contains two counts. Count 1 alleges that the defendant B. J. Pentabone, Inc. (contractor), as principal, and the defendant, New Amsterdam Casualty Company (surety), delivered a performance bond to the town of Hingham, as security for the performance by the contractor of the terms and conditions of a decision of the town board of appeals rendered on August 8, 1958, and amended on February 5, 1959, approving the application of the Toomeys (owners) for permission to remove fill from land owned by them in the town. The town alleges a breach of the bond by the contractor in that it failed to comply with the board's decision and that it and the surety are liable on the bond.

Count 2 of the declaration alleges that the contractor "entered into a contract, express and implied" with the board on behalf of the town and is against the contractor for an alleged failure to comply with the terms of that contract.

The equity case is a proceeding against the owners and the contractor pursuant to G. L. c. 40A, § 22, inserted by St. 1954, c. 368, § 2, to enforce the zoning by-law of the town.[2] The master filed a report which is in substance identical with his report as auditor.

---

[2] Section 22 reads in part: "The superior court shall have jurisdiction in equity to enforce the provisions of . . . [The Zoning Enabling Act], and any ordinances or by-laws adopted thereunder, and may restrain by injunction violations thereof."

We summarize the auditor's findings as follows: In July, 1958, the owners applied to the board in accordance with §§ V and VI–A of the zoning by-law for a permit to remove soil from their property. The board approved the application by a decision dated August 8, 1958. The decision was subject to fourteen conditions, one of which provided for a performance bond to be furnished by the owners and the contractor payable to the town in the sum of $10,000 "conditioned on the strict compliance by the contractor of all conditions set forth in . . . [the] decision." Other conditions related to the manner of soil removal and provided for respreading the area with existing loam and topsoil, removal or burial of boulders, and regrading and planting of the area.

Because of errors in the contractor's original computations, the decision was amended to allow for the removal of a greater amount of fill, and changes were made with respect to the grading of the property. These amendments are set forth in the board's decision of February 5, 1959. The amended decision required that the condition of the original decision concerning the performance bond be met. The auditor found that "in all other material aspects" the decisions are the same and that "[t]he amendments allowed by the latter decision of the [b]oard of [a]ppeals were for the benefit of the defendant, B. J. Pentabone, Inc." The contractor attended the board hearings and had knowledge of the conditions. The plaintiff had given notice that it expected compliance with the decision of the board. Pursuant to a contract between the contractor and the owners for the purchase of fill, some 200,000 yards of fill were removed by the contractor.

The contractor did not comply with several conditions of the amended decision. In particular, the auditor found (1) that engineering data satisfactory to the building commissioner that the conditions of the decision had been met were not furnished; (2) that 50% of the excavated area was improperly graded and required regrading; (3) that all boulders were not buried or removed; (4) that loam was

improperly spread on the property; (5) that the land was not left in a uniformly graded condition; (6) that because the area had been improperly covered with topsoil, reseeding was required; and (7) that the spreading of loam or topsoil that did in fact occur took place two to three years after the date set forth in the board's decision.

The auditor found that the fair cost of complying with the conditions amounted to $26,975 and found for the plaintiff on both counts of the declaration. On count 1 there was a finding against each defendant in the amount of $10,000, to be limited to one recovery. On count 2, he found for the plaintiff in the amount of $26,975, this amount to be reduced by the sum recovered from either defendant on count 1.

The law case was heard by a judge solely on the auditor's report. The plaintiff moved for judgment on the report and this motion was granted. The contractor presented a motion to strike from the auditor's report the findings against it on counts 1 and 2, which was denied; it also requested certain rulings, all of which were denied.[3] The contractor took exception to the allowance of the plaintiffs' motion for judgment, the denial of its motion to strike, and the denial of its requests.

In the equity case, in which the owners and the contractor were defendants, the master found for the plaintiff against all the defendants. He found specifically that the contractor agreed to comply with the terms of the original decision of the board and requested at a later time that the terms of this decision be amended for its benefit.

After confirmation of the master's report a final decree was entered granting a mandatory injunction requiring the defendants to comply with the unfulfilled conditions of the

---

[3] These requests were: "1. On the law and on the evidence there must be a finding for the defendant, because the plaintiff does not have a cause of action on which it is entitled to recover. 2. On the law and on the evidence there must be a finding for the defendant because the plaintiff is attempting to exercise a private privilege under the guise of a public right. 3. On the law and on the evidence there must be a finding for the defendant because the plaintiff has not suffered any actual damages nor any damages for which it would be legally entitled to recover."

board's decision within three months from the date of the decree. The decree further provided that to the extent the town received satisfaction on any execution issued in the law case, the obligations of the defendants under the decree were to be reduced pro tanto. From this decree the contractor and the owners appealed.

## THE LAW CASE.

1. There was no error in the order for judgment against both defendants for $10,000 on count 1 of the law action. The contractor appears to concede that to the extent of the obligation contained in the bond it had entered into a contract with the town and that the bond was security for its undertaking. At all events that is the effect of what was done, for the bond obligates both the contractor and the surety in the amount of $10,000 if the contractor did not comply with the conditions of the town's permit.

The only challenge to the order for judgment on count 1 comes from the surety; it argues that because of the modification in the town's permit, without its knowledge or consent, it is discharged. This contention cannot prevail.

The modern rule with respect to a compensated surety is that the surety is "(i) discharged if the modification materially increases his risk, and (ii) not discharged if the risk is not materially increased, but his obligation is reduced to the extent of loss due to the modification." Restatement: Security, § 128 (b). See *New Amsterdam Cas. Co.* v. *Taylor Constr. Co.* 12 F. 2d 972, 975–976 (5th Cir.); *Maryland Cas. Co.* v. *Moore,* 82 F. 2d 189 (1st Cir.); Stearns, Suretyship (5th ed.) §§ 6.2, 6.3, 6.8; Simpson, Suretyship, § 29; Williston, Contracts (3d ed.) §§ 1239–1243. The case of *Bayer & Mingolla Constr. Co. Inc.* v. *Deschenes,* 348 Mass. 594, approves this approach in the somewhat analogous situation of an extension of time.

The surety has the burden of showing (a) that the modification materially increased its risk or (b) that some of the liability for which it is answerable resulted from the modifi-

cation. See *Bayer & Mingolla Constr. Co. Inc.* v. *Deschenes*, 348 Mass. 594, 599. This the surety has failed to do. The auditor's report clearly indicates that the modification was made for the benefit of the contractor and that the amended decision was in all material aspects the same as the original decision.[4] These findings do not support the surety's contention that the modification was "vital and material." Having failed to show that the modification was material, the surety was not discharged; nor was there any proof that the modification entitled it to a reduction of its liability.

2. The contractor contends that, other than the performance bond, there was no contract express and implied between it and the town as alleged in count 2. The mere fact, it is argued, that the contractor supplied a performance bond to the town cannot be construed as such an agreement, because it is separate and distinct. We disagree. There is no doubt that a contract existed between the town and the contractor. There was no right to remove soil from the owners' property without a permit from the board. The contractor was present at the board meetings and dealt directly with it. As a condition of granting the permit, the board exacted certain promises from the contractor which agreed to comply with the terms of the board's decision. This agreement is shown by the fact that the contractor supplied a performance bond which recognized the existence of an undertaking by it running to the town to comply fully with the board's decision. The agreement is also shown by the fact that the contractor began work under the original decision and that when, because of error in its calculations it found that it needed more fill, the agreement was modified for its benefit.

3. The defendants argue that this case involves an attempt by the town to obtain money damages for a violation of the

---

[4] The auditor found that "[a]fter work had been initiated under . . . [the] original decision it became apparent that amendments had to be made. This was due to errors in the contractor's original computations and was required to allow the removal of a greater amount of fill from the area in addition to changing the entire grade of the property in the opposite direction from that originally contemplated." The auditor further found that in all other material aspects the undertakings were the same.

town's zoning by-law. It is urged that there is no authority for the proposition that a municipality may obtain money damages because of violations of a zoning by-law covering private property. On the contrary, it is suggested that the remedies provided by statute for zoning violations give no right of money damages to the town. See G. L. c. 40A, §§ 21, 22. The defendants conclude that the remedies available to the town lie by way of injunctions or by complaints to the Commonwealth for violation of penal statutes.

This argument is without merit. It assumes that the town is merely seeking damages for a violation of the zoning by-law, whereas in fact this is an action of contract where the town is seeking to recover the amount which it would reasonably cost it to do the work which the contractor had agreed to do. *Stoneham* v. *Savelo*, 341 Mass. 456, 459.

The town has a legitimate interest in ensuring that private land from which a large quantity of soil had been taken would not be left in an unsightly condition. To that end it could exact promises from those to whom permission to remove the soil was given, and if those promises were not carried out, as was the case, it could invoke equitable relief under c. 40A, § 22, or it could assess the costs of performing them against the promissors and do the work itself. Otherwise the promises, without which the permit would not have been granted, would amount to no more than an exercise in futility. We decline to place such a construction on the negotiations.

## THE EQUITY CASE.

The equity appeal may be disposed of briefly. Neither the owners nor the contractor challenges the relief there granted. The only matters discussed in the owners' brief are: "1. The right of the Court to enforce a right that is private to . . . [them] [and] 2. The right of the Court to assess damages against . . . [them]." But neither of these matters is involved in the equity suit. The only assessment of damages is in the law case, where the owners are not parties.

The contractor complains of two rulings on evidence. But in view of the vagueness of the contentions and the fact that it has not furnished us with anything that can fairly be called argument, we do not pass on them. *Lolos* v. *Berlin*, 338 Mass. 10, 14.

### CONCLUSION.

Paragraph 1 of the final decree in the equity case provides that the owners and the contractor shall comply with specified conditions of the board's decision, and paragraph 2 requires that this be done within three months from the date of the decree. Paragraph 3 provides that in the event the plaintiff in the law case receives satisfaction on any executions issued in the law case the owners' and the contractor's obligations under paragraph 1 shall be reduced pro tanto. We think that this might present difficulties. Accordingly the final decree is to be modified by eliminating paragraph 3, and, as so modified, it is affirmed with costs of appeal. The decree may provide for the retention of jurisdiction for a reasonable time to determine questions which may arise in carrying it out.

The exceptions in the law case are overruled. The executions in that case are not to issue if within three months from the entry of the decree after rescript the owners and the contractor comply with the equity decree. If there is no compliance within the time limited in the decree after rescript, the executions are to issue. Upon satisfaction of the executions the town is to restore the property to the condition agreed to by the contractor. Whether there has been such compliance shall, if the parties are unable to agree, be determined by the trial judge.

*So ordered.*