RICHARD H. McCARTHY & others, trustees, *vs.* BOARD OF
APPEALS OF ASHLAND.

Middlesex.    October 8, 1968. — November 4, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
SPIEGEL, & REARDON, JJ.

*Zoning,* Amendment of by-law or ordinance, Plan approved under sub-
division control law.  *Subdivision Control.*

By virtue of G. L. c. 40A, § 7A, as amended through St. 1961, c. 435, § 2,
a lot of land in a town shown on a definitive subdivision plan duly ap-
proved by the town's planning board was exempt for five years after
such approval from the application of an amendment to the town's
zoning by-law, adopted after such approval, changing the lot from a
district in which any residential use was allowed to a single residence
district;  and the amendment did not authorize a denial by the build-
ing inspector of an application, filed by the owner of the lot after the
adoption of the amendment but within five years after the planning
board's approval of the plan, for a permit to erect an apartment build-
ing on the lot, even though the planning board when it approved the
plan believed that the lot was going to be used for a single family
dwelling house.

BILL IN EQUITY filed in the Superior Court on May 19,
1967.

The suit was heard by *McLaughlin,* J.

*John V. Phelan* for the defendant.

*Eugene L. Tougas* for the plaintiffs.

SPIEGEL, J.    This is a bill in equity by way of an appeal
under G. L. c. 40A, § 21, by the trustees of the Lakeridge
Realty Trust from a decision of the board of appeals of the
town of Ashland (board) sustaining the building inspector's
denial of a building permit.    The board appealed from a
final decree annulling its action and directing the issuance of
the building permit.    The judge filed "Findings, Rulings
and Order for Decree" which he subsequently adopted as a
report of material facts.    The evidence is reported.

The specific lot in question was at one time one of nine lots comprising a tract of land owned by one Farese. Four of these lots were front lots not requiring the approval of the planning board for subdivision and were sold to a developer who constructed single family dwellings on them.

On June 6, 1962, a preliminary plan for the subdivision of the remaining five lots was submitted to the planning board and notice of its submission was given to the town clerk. A definitive plan was approved on December 6, 1962. On both of these dates the controlling provision of the zoning by-law of Ashland read as follows: "Section II. Use Regulations. 1. In residential and agricultural districts. Buildings, structures, and premises may be used for any residential . . . purpose. . . ." The lots shown on the definitive plan were within a residential district. At the annual town meeting on March 11, 1964, the zoning by-law was amended to create Residential "A" and Residential "B" districts. In Residential "A" districts the use of buildings, structures and premises was limited to "any single residential . . . purpose. . . ." The lots shown on the definitive plan are within a Residential "A" district.

On March 7, 1966, the plaintiffs acquired title to the five lots from one Quinn who had purchased them from Farese the previous year. On July 20, 1966, one of the plaintiffs filed with the building inspector an application for a building permit for an apartment building on one of the lots shown on the definitive plan. The application was disapproved because of the "Residential area 'A' [zoning]." The plaintiffs appealed to the board which held a public hearing and filed a decision upholding the action of the building inspector. The trial judge ruled that, in accordance with the provisions of G. L. c. 40A, § 7A, the action of the board was in excess of its authority and directed the building inspector to issue the requested building permit.

General Laws c. 40A, § 7A, as amended through St. 1961, c. 435, § 2, stated in pertinent part that "[w]hen a preliminary plan . . . has been submitted to a planning board, and written notice of the submission of such plan has been

given to the city or town clerk, . . . and, if ..... [the] definitive. plan [evolved from the preliminary plan] becomes approved, . . . [the] provisions of the ordinance or by-law in effect at the time of the submission of the first submitted plan shall govern the land shown on such approved definitive plan for a period of five years from the date of such approval *notwithstanding any other provision of law*" (emphasis added).

The board concedes that § 7A "lends much force" to the contention of the plaintiffs that they are entitled to build any structure permitted by the zoning by-law in effect in 1962. However, they contend that the scope of § 7A is limited to the permissible use contemplated by the planning board at the time that the plan was approved. The board points to the finding of the trial judge that "the Planning Board was of the opinion that it was going to be developed for single family dwelling houses." What the board is in essence urging is that the planning board's opinion constitutes an implied restriction on the use of the subdivision. Such a restriction, however, is expressly prohibited by the Subdivision Control Law. General Laws c. 41, § 81Q, inserted by St. 1953, c. 674, § 7, states in pertinent part that "[e]xcept in so far as it may require compliance with the requirements of existing zoning ordinances or by-laws, no rule or regulation [of the planning board] shall relate to the size, shape, width, frontage or use of lots within a subdivision, or to the buildings which may be constructed thereon." The planning board could have adopted a regulation that "not more than one building designed or available for use for dwelling purposes shall be erected or placed or converted to use as such on any lot in a subdivision, or elsewhere in the city or town, without the consent of the planning board." G. L. c. 41, § 81Q.[1] If the ways were "not otherwise deemed adequate," the planning board could have expressly limited within a particular subdivision the

---

[1] A copy of such a regulation must be kept on file available for inspection in the planning board's office and, if adopted after January 1, 1954, must be transmitted to the register of deeds and recorder of the land court in order to be effective.

"lots upon which buildings . . . [might have been] erected and the number of buildings that . . . [might have been] erected on particular lots." G. L. c. 41, § 81R.[2] See *Ellen M. Gifford Sheltering Home Corp.* v. *Board of Appeals of Wayland,* 349 Mass. 292. But the planning board could not have expressly limited the use of a subdivision lot to a single-family dwelling where the applicable zoning by-law permitted a multi-family dwelling. In any event, the planning board's opinion as to the contemplated use of a subdivision lot at the time of its approval of the subdivision plan could not do so. "There is no uncertainty or ambiguity in § 7A. The statute gives a period of three [now seven[3]] years within which the owner of the land shown on the approved plan may proceed under the provisions of the zoning by-law as in force prior to their amendment." *Smith* v. *Board of Appeals of Needham,* 339 Mass. 399, 402. See *Ward & Johnson, Inc.* v. *Planning Bd. of Whitman,* 343 Mass. 466.

The board's argument that the purposes of the Subdivision Control Law will be completely defeated by the unqualified application of G. L. c. 40A, § 7A, is without merit. While the Legislature clearly intended the furtherance of the purposes outlined in G. L. c. 41, § 81M, we think that the Legislature also intended to protect the developer. In addition to § 7A, G. L. c. 41, § 81Q, as amended through St. 1960, c. 196, protects the developer from a change in the rules and regulations established under that section while the subdivision plan is before the planning board for approval.

*Decree affirmed.*

---

[2] Such a limitation must be endorsed on the subdivision plan or set forth in a separate instrument attached to the plan.

[3] General Laws c. 40A, § 7A, prior to the enactment of St. 1961, c. 435, § 2, provided for a period of three years. St. 1957, c. 297. Statute 1961, c. 435, § 2, extended the period to five years, and St. 1965, c. 366, § 1, further extended the period to seven years. Here the plaintiffs applied for the building permit within the five year period in effect at the time the subdivision plan was submitted and endorsed as approved.