Glacier Sand & Stone Co. Inc. *v*. Board of Appeals of Westwood.

without compensation.' *Commissioner of Natural Resources* v. *S. Volpe & Co. Inc.* 349 Mass. 104, 111. That decision may depend in part on the board's . . . action on the . . . [possible petitioner's] application for . . . [a] special permit." *MacGibbon* v. *Board of Appeals of Duxbury,* 356 Mass. 635, 641.

---

GLACIER SAND & STONE CO., INC. *vs.* BOARD OF APPEALS
OF WESTWOOD.

Norfolk. May 4, 1972. — June 26, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Real Property,* Removal of soil. *Zoning,* Removal of soil.

The provision of G. L. c. 40, § 21 (17), as appearing in St. 1967, c. 870, that any by-law prohibiting the removal of sand and gravel "hereunder" shall not apply to any sand or gravel which is to be removed "in compliance with the requirements of a subdivision plan approved by the town planning board," did not govern a town zoning by-law stating that tentative or final approval of a subdivision plan by the planning board should not be construed as authorizing the removal of such material from the premises shown thereon. [241–242]

There was a rational basis for the denial by a town's board of appeals of a permit under its zoning by-law for removal of earth materials where it appeared that the land was situated in a residential area in the vicinity of large "well-cared for lots" containing "medium-priced" dwellings; that the planning board had approved a subdivision plan of the locus which called for the removal of more than 110,000 yards of gravel; that the noise, dust and fumes generated by the earth removal process would be detrimental to the neighborhood; and that a contemplated residential development of the locus would necessitate removal of all the trees thereon. [242]

BILL IN EQUITY filed in the Superior Court on July 12, 1968.

The suit was heard by *Hale,* J.

*Henry P. McLaren* for the plaintiff.

*Arnold W. Hunnewell, Jr.,* Town Counsel, for the defendant.

REARDON, J.   The plaintiff appeals from a decree of the Superior Court sustaining the denial by the board of appeals of Westwood (the board) of a special permit for removal of earth materials.   The Superior Court judge made findings and rulings.   We refer to the findings.

The plaintiff owns land in Westwood on the town line between Westwood and Norwood.   The land is situated in a residential area in the vicinity of large "well-cared for lots" containing "medium-priced" dwellings.   The locus is covered by a stand of pine trees, and through its center runs a high ridge sloping to the sides and rear of the site.   Its high point is about fifteen feet above the street grade and about fifty-five feet above the lowest grade at the sides and rear of the property.   The plaintiff has had a subdivision plan of the locus approved by the planning board of the town of Westwood.   This plan calls for an alteration of the surface of the locus so that its high point would be "about level" with the grade of Canton Street, with a slope back to the rear line, the grading at that point being approximately fifty-five feet below that of Canton Street.   This alteration would remove the ridge running through the center of the property and would require the removal of more than 110,000 yards of gravel.   The plan approved for subdivision of the locus requires this alteration.   The plaintiff was formerly in the sand and gravel business and has an industrial development under way in Norwood to the south of the locus.   The material from the locus is needed in that development, according to the president of the plaintiff. After the removal of the gravel the plaintiff proposes to transform the locus into a residential home development which would necessitate removal of all of the trees.   Upon a view, the judge clearly heard the noise of excavation proceedings at the sand and gravel operation about a mile from the locus.   He found that the removal of the 110,000 yards of gravel would be "obnoxious and detrimental to the residential neighborhood in which the locus is situated."   He made reference to the dust and fumes which would be generated by the earth removal process.

The board had made these findings and, in addition, had found that gravel conveyed by heavy trucks would cause injury to the surface of Canton Street, and a traffic problem which would pose a safety threat. The judge found these facts to be so, but in view of *Stow* v. *Marinelli*, 352 Mass. 738, accorded these two findings no weight. The judge found in addition that the removal of the gravel could result in the destruction of a natural buffer screening the Canton Street neighborhood from the Norwood industrial site, and that the loss of this buffer would have an adverse effect on Canton Street property values. He specifically did not take these facts into consideration in his decision.

We have here an issue of law presented by the interaction of G. L. c. 40, § 21 (17), as amended through St. 1967, c. 870, which reads in part as follows: "Any order or by-law prohibiting such removal hereunder shall not apply to any soil, loam, sand or gravel which is the subject of a permit or license issued under the authority of the town or by the appropriate licensing board of such town or by the board of appeal, or which is to be removed in compliance with the requirements of a subdivision plan approved by the town planning board"; and a portion of the Westwood zoning by-law, § 21, "Earth Removal Regulations: (f) Permits in Proposed Subdivisions. It is the intention of this By-Law that the removal of earth materials from any parcel of land for which a preliminary or definitive subdivision plan has been prepared shall be allowed only in the same manner as removal from other parcels of land in the Town. Consequently, tentative or final approval of a subdivision plan by the Planning Board shall not be construed as authorizing the removal of material from the premises even though in connection with the construction of streets shown on the plan." It is the argument of the plaintiff that G. L. c. 40, § 21 (17), is applicable here. It is argued by the board, and we agree, that to interpret the by-law enabling statute as a governing factor in the Westwood zoning by-law would nullify the zoning by-law,

in effect providing the subdivider with carte blanche authority to remove such earth materials as he wished, thus avoiding a hearing before the zoning board of appeals. Again, as pointed out by the board, Westwood has not adopted a by-law pursuant to G. L. c. 40, § 21 (17), which makes specific reference to orders or by-laws "prohibiting . . . [earth] removal hereunder." We likewise agree that the function of planning boards with respect to subdivision control law is designed primarily to be employed in specific ways regarding access to lots, in insuring sanitary conditions in subdivisions, and in securing safety in general in the use of public and subdivision ways within a town. G. L. c. 41, § 81M. The function of the board of appeals in Westwood, or any other town, is quite distinct and has to do with the application of standards other than those established for planning boards. *Burlington* v. *Dunn*, 318 Mass. 216, 221–223, contains a full discussion by Justice Qua, with numerous cited cases, with respect to the subject of earth removal and its regulation under G. L. c. 40.

Section 21 (a) (2) of the Westwood zoning by-law elaborates standards which must be met prior to the granting of a permit for removal of earth materials. The by-law is by definition to promote "the health, safety, convenience, morals or welfare" of the inhabitants of a town. G. L. c. 40A, § 2, as amended through St. 1959, c. 607, § 1. Again we agree with the board that the zoning by-law relates directly to the stated purpose of the statute, and that the standards established are proper. This case is very close to *Raimondo* v. *Board of Appeals of Bedford*, 331 Mass. 228. It could not be said there, nor can it be said here, that there is anything in the judge's findings "from which it can be said that there was no rational basis for the denial of the permit." P. 230. In fact, the judge's findings, coördinated carefully as they are, can lead only to the conclusion that his eventual action was proper.

*Decree affirmed.*