M. DeMatteo Construction Co. *v.* Board of Appeals of Hingham.

M. DeMatteo Construction Co. *vs.* Board of Appeals
of Hingham.

Plymouth.    December 9, 1974. — September 3, 1975.

Present: Keville, Goodman, & Armstrong, JJ.

*Zoning,* Removal of soil, Amendment of by-law or ordinance, Subdivision control.    *Real Property,* Removal of soil.    *Subdivision Control. Equity Pleading and Practice,* Decree, Retention of jurisdiction, Declaratory proceeding, Zoning appeal, Amendment.    *Estoppel. Equity Jurisdiction,* Declaratory relief, Zoning.    *Superior Court,* Jurisdiction.    *Law of the Case.*

Where a Superior Court decree, in a zoning appeal under G. L. c. 40A, § 21, was premised on, but did not expressly determine, the applicability of an amendment to a zoning by-law, and provided for the court's retention of jurisdiction over the controversy and for remand on motion of the plaintiff, a second Superior Court judge, hearing the case on remand, was free to reject the premise and find the amendment inapplicable under G. L. c. 40A, § 7A [454-457]; there was no abuse of discretion in the allowance of the plaintiff's motion to amend its bill for declaratory relief to raise the issue of the applicability of the amendment where there was no evidence of damage to the defendants in allowing the motion [457].

Where a land developer's subdivision plan was approved by the planning board of a town on April 5, 1965, but the building commissioner thereafter ordered the developer to cease excavation on the land because it had not obtained a special permit from the zoning board of appeals as required by an amendment to the zoning by-law which had been approved by the Attorney General on April 13, 1965, the five-year period under G. L. c. 40A, § 7A, stopped running at the time the building commissioner ordered excavation to cease. [458]

There was no merit in a contention by a zoning board of appeals that a planning board's approval of a subdivision plan was conditional upon the developer's application for a permit where the condition was neither endorsed on the plan nor set forth in a separate instrument referred to in the plan. [458-460]

M. DeMatteo Construction Co. *v.* Board of Appeals of Hingham.

In a declaratory relief proceeding, a zoning board of appeals was entitled to introduce evidence as to whether a land developer's excavation of streets shown on an approved subdivision plan constituted in substance the opening of a new sand and gravel pit which would require a special permit. [460-462]

THREE BILLS IN EQUITY filed in the Superior Court on February 28, 1966, December 11, 1969, and August 17, 1970, respectively.

The suits were heard by *Kalus, J.*

*John R. Hally (Patrick F. Brady* with him) for the Board of Appeals of Hingham.

*Herman Snyder (David F. Parish* with him) for the plaintiff.

GOODMAN, J.   These are three appeals; two are by the board of appeals of Hingham (zoning board) from final decrees entered in cases brought under G. L. c. 40A, § 21, in which the zoning board was the defendant, and one is by the building commissioner of Hingham (building commissioner) from a final decree entered on a bill for declaratory relief (G. L. c. 231A) in which he was the defendant.[1] The plaintiff in all three cases is the owner of a tract of land (the locus) of about 174.5 acres in Hingham subject to a subdivision plan approved by the town planning board under the Subdivision Control Law. G. L. c. 41, §§ 81K-81GG. The plaintiff is engaged in general construction and land development. The cases originate from the plaintiff's attempt to excavate and remove earth material from the locus and particularly from parts of the locus designated as roadways on the subdivision plan.

The relevant history of these cases begins on January 20, 1964, when the plaintiff filed with the planning board a preliminary plan of a proposed subdivision for the locus. G. L. c. 41, § 81S. On August 20, 1964, the plaintiff filed a

---

[1] The building commissioner also appealed an interlocutory decree allowing a motion to amend the bill for declaratory relief.

The evidence in all three cases is reported, and the trial judges who heard the cases made findings, rulings and orders. The facts alluded to in this opinion are taken primarily from the findings, rulings and orders.

448    3 Mass. App. Ct. 446

M. DeMatteo Construction Co. *v.* Board of Appeals of Hingham.

definitive subdivision plan which was disapproved on October 5, 1964. The plaintiff thereupon revised its plan to conform with the recommendations of the planning board, and this revised version of the definitive plan was approved, and so endorsed, on April 5, 1965. G. L. c. 41, § 81U. The subdivision plan comprised some 270 lots and called for a number of roads totaling almost four miles; none of them had been laid out or excavated on this undeveloped tract.

Meanwhile the town was taking steps to amend its zoning by-laws governing earth removal (see *Goodwin* v. *Board of Selectmen of Hopkinton*, 358 Mass. 164, 170 [1970]). Theretofore § V-E of the by-law (hereinafter old V-E), entitled "Removal of Earth Products," had prohibited "[t]he removal from any premises of more than three (3) cubic yards of soil, loam, sand, stone or gravel in any one year . . . except when required in connection with the construction of a building or street or other activity authorized by this By-Law . . . ."[2] On March 22, 1965, the town voted to replace this section of the zoning by-law with a new § V-E (hereinafter V-E [1965]) which was approved by the Attorney General on April 13, 1965. V-E (1965) required generally (with exceptions not considered pertinent by the parties) a permit from the zoning board for the removal of earth materials. More explicit standards for the grant of a permit were provided, and the conditions which the zoning board was empowered to impose were elaborated. V-E (1965) was expressly made applicable to the removal of earth materials in a proposed subdivision "even though in connection with the construction of streets shown on the plan." See *Glacier Sand & Stone Co. Inc.* v. *Board of Appeals of Westwood*, 362 Mass. 239, 241 (1972) (a zoning by-law using the same language).

---

[2] Old V-E further provided: "Opening of new sand and gravel pits may be authorized by special permit of the Board of Appeals after public hearing with such restrictions and limitations as the Board may impose provided such excavations are not harmful or detrimental to the neighborhood. Removal of soil other than specifically provided for and permitted by this By-Law is classified as 'stripping' and is prohibited."

.

3 Mass. App. Ct. 446                                    449

M. DeMatteo Construction Co. *v*. Board of Appeals of Hingham.

Upon approval of the definitive plan by the planning board, the plaintiff removed the trees and topsoil from the areas laid out as ways on the subdivision plan, stockpiled the topsoil at several locations on the tract, and also piled up brush and tree stumps on the sides of the ways. The plaintiff had begun excavating to bring the roads to grade when the building commissioner, "several weeks" (possibly five to seven weeks) after the plaintiff had begun to work on the tract, ordered that it stop operations because it had not obtained a special permit from the board for the removal of earth materials in accordance with V-E (1965).

The plaintiff on November 16, 1965, made application to the building commissioner for a permit "for removal of [approximately 857,000 cubic yards of] earth materials from [the roads shown on the subdivision plan for the locus] ... as required to construct said roads with slopes to conform with the grades approved by the Hingham Planning Board ...." On that same date, the plaintiff's application was rejected by the building commissioner on the ground that approval of the zoning board was required, and the plaintiff filed an application with the zoning board. Both applications stated that the plaintiff was proceeding under V-E (1965) but "without waiving and expressly reserving all rights ... with respect to the question of the validity" of V-E (1965).

On February 14, 1966, the zoning board, after hearing, filed its decision denying the application. The decision was based on a number of grounds. It found that "the proposed operation ... would be especially harmful and detrimental to the neighborhood" and that "the earth removal operation proposed here would constitute, in effect, a commercial gravel pit under the guise of a residential development." Also the zoning board pointed out that the plaintiff had requested that the application be considered "as a whole in the form submitted"[3] and thus precluded a

---

[3] The zoning board described this limitation as follows: "The applicant made it clear at the hearing that it desired to have the application considered and acted upon as a whole in the form submitted and

"section-by-section development." The zoning board found that this position, if sanctioned, would permit "the excavation of the ways and adjacent slopes without relation to the grading and development of the lots [which] would expose the neighborhood and the Town to serious detrimental consequences such as the Planning Board describes."[4]

The plaintiff appealed to the Superior Court under G. L. c. 40A, § 21, attacking the zoning board's decision as "usurp[ing] the authority of the Planning Board ... in derogation of ... the Subdivision Control Law" and generally as exceeding the zoning board's authority. This case (E-1011) was heard on June 7 and 8, 1966; the Superior Court in its "Findings, Rulings and Order" referred to the limitation which the plaintiff had placed on the applications (see fn. 3) and found and ruled that the denial of a permit with respect to the proposal as presented by the plaintiff for the excavation of the ways was "not arbitrary, unreasonable or capricious in the circumstances, and [wa]s not beyond the power or authority of the Board."

The court held, however, that "[i]t appears likely that with the imposition of reasonable conditions the proposed operation could be carried out without material adverse effect on the health or safety of persons living in the neighborhood, on the use or amenities of adjacent land, or the

did not desire this Board to consider a permit with respect to any portion of the tract separately or with respect to the grading of any lots other than the slopes to ways as shown on the plan."

[4] The zoning board adopted the findings of the planning board in its report to the zoning board pursuant to V-E (1965) 2b. The planning board's letter states: "It had been our understanding with the applicant and his representatives at various times during the course of the subdivision plan consideration that the applicant was in agreement with the Planning Board's views that the total area should be developed in appropriate sections, not all at one time, preparing both lots and streets in any one area before moving on to another area, and that an appropriate bond should be given in connection with any such work. ... In view of the scope of the undertaking, the uncertainties of the future, and the very substantial adverse effect upon the Town if the entire subdivision was not completed but left with only street excavations, we believe section-by-section completion of street and lot grading, under appropriate bond, is necessary."

3 Mass. App. Ct. 446                                   451

M. DeMatteo Construction Co. *v.* Board of Appeals of Hingham.

best interests of the Town, and, by the same means, guard against the project becoming merely a commercial gravel removal operation from its inception or thereafter."[5]

Accordingly, it entered a "final decree" upholding the zoning board, but providing for recommittal of the application to the zoning board if the plaintiff should move "for further consideration without the limitation ... that the application must [not] be considered ... with respect to a portion of the tract separately, nor with respect to the grading of any of the lots other than slopes to ways ...." The decree also ordered that the court "retain jurisdiction of this cause pending review, if such review is requested by the appellant, of further [board] action." On the same day, December 22, 1966, in accordance with that decree, an interlocutory decree was entered without opposition recommitting the application to the zoning board.

The plaintiff thereupon engaged a firm of landscape architects and site planners, who prepared a program for the development, under the approved subdivision plan, of the entire locus in four sections with (in general) roads built, utilities installed, and lots finished and graded in one section before development of the next section. The plaintiff presented this program to the zoning board and again requested a special permit which the zoning board, after hearing, again denied.

The zoning board found "a design to maximize earth removal under the guise of subdivision," in effect "a prohibited gravel removal operation in a residential district," and pointed out other specific factors which would make the issuance of a permit on the basis of the plaintiff's presentation "harmful and detrimental to the neighborhood."

Thereupon the plaintiff on December 11, 1969, filed a "request for review" in E-1011 pursuant to the retention of

---

[5] The court also said that in reaching its decision the zoning board could "take into account the probable effect on the neighborhood, on the public health and safety, and on the interests of the Town of gravel removal operations under an unrestricted authorization to appellant [the plaintiff] to conduct such operations in the entire tract at such times and in such manner as the appellant in its uncontrolled discretion should determine."

jurisdiction by the Superior Court, and on the same date (apparently to forestall any procedural questions) it filed a separate bill in equity under G. L. c. 40A, § 21, for the same purpose (E-2901). This bill described the course of the proceedings under E-1011 and prayed that the decision of the board "be annulled" and that the court "make such decree as justice and equity may require." Subsequently, on August 17, 1970, the plaintiff filed a bill for declaratory relief against the building commissioner (E-3204). The bill set out the circumstances under which the building commissioner had originally ordered the plaintiff to stop the excavation of the streets designated on the approved subdivision plan and the subsequent proceedings. It alleged that the plaintiff was "entitled to remove the earth material in connection with the building of the roadways shown on the plan approved by the Planning Board of the Town of Hingham" and prayed that his right to do so be established. As the basis for its entitlement, it referred to G. L. c. 40, § 21(17), the general grant of authority to regulate earth removal.

The three cases were consolidated for trial and were tried on May 8 and 9, 1972, when the evidence in the declaratory relief proceeding (E-3204) was heard, and on June 20, 1972, when the evidence in the two proceedings under G. L. c. 40A, § 21, (E-1011 and E-2901) was presented. The evidence taken on May 8 and 9, 1972, applicable to E-3204, was also made applicable to both E-1011 and E-2901; the evidence in these two cases was not separated. On June 20, 1972, at the commencement of the hearing, the plaintiff filed and the court allowed a motion to amend the bill for declaratory relief for the purpose of raising the applicability of G. L. c. 40A, § 7A. It had, so far as appears, never been raised before except orally on May 8, 1972, prior to the trial of E-3204.[6]

---

[6] The plaintiff has properly abandoned any reliance on G. L. c. 40, § 21(17). Cf. *Goodwin* v. *Board of Selectmen of Hopkinton,* 358 Mass. 164 (1970); *Byrne* v. *Middleborough,* 364 Mass. 331, 333-339 (1973).

3 Mass. App. Ct. 446           453

M. DeMatteo Construction Co. *v.* Board of Appeals of Hingham.

That statute, as amended by St. 1961, c. 435, § 2[7] (in effect on January 20, 1964, when the plaintiff submitted its preliminary plan), provided that the zoning by-law in effect at the submission of the preliminary plan continued (with exceptions not here relevant) to apply for five years from the final approval of the definitive plan. The plaintiff thus took the position, by virtue of this zoning freeze statute, that V-E (1965), under which he had proceeded before the zoning board, was never applicable to the locus and that the excavation of the streets was governed by old V-E and required no permit. The court, in its "Findings, Rulings and Order" made applicable to all three cases and adopted as its report of material facts in all three cases, accepted this position and entered identical decrees in the proceedings under G. L. c. 40A, § 21 (E-1011 and E-2901), declaring that the locus "was, under the provisions of General Laws Chapter 40A, Section 7A, governed and controlled by the Zoning By-law of the Town of Hingham in effect as of January 20, 1964 ... [and that the] Plaintiff is entitled to remove and excavate earth materials in connection with the construction of the roadways as shown

---

[7] That statute amended c. 40A, § 7A, to read: "When a preliminary plan referred to in section eighty-one S of chapter forty-one has been submitted to a planning board, and written notice of the submission of such plan has been given to the city or town clerk, the land shown on such preliminary plan and on the definitive plan evolved therefrom, or in the absence of a preliminary plan, the land shown on a definitive plan submitted under the provisions of the subdivision control law, shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of the submission of the plan first submitted while such plan or plans are being processed under said subdivision control law; and, if said definitive plan becomes approved, or is disapproved and thereafter amended and duly approved, said provisions of the ordinance or by-law in effect at the time of the submission of the first submitted plan shall govern the land shown on such approved definitive plan for a period of five years from the date of such approval notwithstanding any other provision of law ...."

The five-year period was extended to seven years by St. 1965, c. 366, which became effective subsequent to April 5, 1965, the date the definitive subdivision plan was approved and endorsed. (See St. 1964, c. 688, retaining the five-year period.) The plaintiff properly concedes that the seven-year period has no applicability. See *Vazza* v. *Board of Appeals of Brockton,* 359 Mass. 256 (1971).

on the approved definitive subdivision plan . . . and was not required under the applicable 1964 Zoning-By-law to obtain a permit from the Hingham Board of Appeals."[8]

In the declaratory relief proceeding against the building commissioner, the court declared that his order in 1965 stopping the excavation of the roads was invalid and, as in the other decrees, that the plaintiff was entitled "to excavate and remove earth materials in connection with the construction of the roadways" and that the zoning board had no authority in this regard. The defendants appealed.

The defendants make no serious attempt to gainsay that — given the mere enactment (and approval) of V-E (1965) and nothing more — the zoning freeze statute would preclude application of V-E (1965) to the locus for a period of five years, during which old V-E would apply. Rather, the defendants contend that (1) the plaintiff was barred from raising the applicability of the zoning freeze at the stage of the proceedings in May and June of 1972 when it first did so; (2) the circumstances in this case are such that V-E (1965), rather than old V-E, is the applicable by-law; and (3) that, in any event, old V-E does not permit the road excavation operations which the decree allows. We discuss these in turn.

1. The defendants' arguments that the plaintiff may not raise the applicability of the zoning freeze statute are primarily directed against the declaratory relief proceeding (E-3204), amended to include that issue. The defendants' contentions overlook that the most explicit declaration of the applicability of the zoning freeze statute is found in the decrees in E-1011 and E-2901, the proceedings under G. L. c. 40A, § 21, so that even if E-3204 were to be dis-

---

[8] The decrees also declared that the order of the board "denying the . . . [plaintiff's] application for a permit to remove earth materials for the construction of ways under the definitive subdivision plan approved by the Hingham Planning Board was beyond the authority of the Board of Appeals and, therefore, invalid and void." In context this is a corollary to the rest of the decree that by virtue of the zoning freeze the zoning board had no jurisdiction to apply V-E (1965) to the excavation of the roadways.

missed,[9] it would avail the defendants nothing if those two decrees, and especially the decree in E-1011, remain.

The defendants concede that there is jurisdiction in the Superior Court in the proceedings under G. L. c. 40A, § 21 (E-1011 and E-2901), to decide the applicability vel non under G. L. c. 40A, § 7A, of a zoning by-law. Declaratory adjudications in proceedings under G. L. c. 40A, § 21, brought by landowners were made in, e.g., *Vazza* v. *Board of Appeals of Brockton,* 359 Mass. 256 (1971), and *Glacier Sand & Stone Co. Inc.* v. *Board of Appeals of Westwood,* 362 Mass. 239; and *Woods* v. *Newton,* 349 Mass. 373 (1965), precludes any contention in these zoning appeals, as well as in the declaratory relief proceeding (see fn. 9), that the Land Court has exclusive jurisdiction. No contention is made that the decree in E-1011 and E-2901 — including the declaration of the applicability of old V-E — is not within the scope of the pleadings in those cases. Indeed, the defendants contend that "the bill of complaint in E-1011 actually does contain assertions as to the invalidity and illegality of the by-law as it affected the locus, contentions similar to those eventually raised in E-3204."[10] The

---

[9] We reject the defendants' argument that there is no jurisdiction to make an appropriate declaration under the declaratory relief statute (G. L. c. 231A). The argument, based on *Sisters of the Holy Cross of Mass.* v. *Brookline,* 347 Mass. 486, 490-492 (1964) (only the Land Court, under G. L. c. 185, § 1[j ½], and G. L. c. 240, § 14A, has jurisdiction), was disposed of in *Woods* v. *Newton,* 349 Mass. 373, 376-377 (1965). That case, which the defendants' brief inexplicably fails to mention, holds that where there is an actual controversy, as in this case, G. L. c. 231A is applicable and that "the holding of [the] *Sisters of the Holy Cross of Mass.* [case] ... must be confined to cases where there is no actual controversy." See *Lapenas* v. *Zoning Bd. of Appeals of Brockton,* 352 Mass. 530, 533 (1967); *Kubik* v. *Chicopee,* 353 Mass. 514 (1968); *Rayco Inv. Corp.* v. *Board of Selectmen of Raynham,* 368 Mass. 385 (1975).

[10] We note that the zoning appeal to the Superior Court (G. L. c. 40A, § 21, 2d par., as amended by St. 1973, c. 1114, § 4) has — in harmony with the new Rules of Civil Procedure — been denominated a "civil action" in which the court may, in accordance with G. L. c. 231A, § 6, grant declaratory relief "upon application of any party made in his pleadings." *New England LNG Co. Inc.* v. *Fall River,* 368 Mass. 259, 260, fn. 1 (1975). Were there any problem of the propriety of the determination under the pleadings, it could be easily resolved by an

defendants' attack in E-1011 is that the 1966 decree, having been based on the premise (as it was) that V-E (1965) was applicable, somehow bars the determination in the 1972 decree that old V-E is applicable. We disagree.

The 1966 decree, though termed "final" (*Kingsley* v. *Fall River*, 280 Mass. 395, 398 [1932]), provided for a remand on motion of the plaintiff (compare *Gerrish* v. *Black*, 109 Mass. 474, 477-478 [1872]) and the retention of jurisdiction in the Superior Court. Thus the decree did not, and did not purport to, exhaust the power of the court over the controversy: and it cannot "be treated as an estoppel until the court that renders it has finally parted with control over the decision." *L. E. Waterman Co.* v. *Modern Pen Co.* 193 Fed. 242, 243 (S.D. N.Y. 1912) (Learned Hand, J.). Restatement 2d: Judgments, § 41 (Tent. draft No. 1, 1973). See *Adams, Harkness & Hill, Inc.* v. *Northeast Realty Corp.* 361 Mass. 552, 556 (1972). See also *Roberts-Haverhill Associates* v. *City Council of Haverhill,* 2 Mass. App. Ct. 715, 719-720 (1974) (holding that a decree remanding proceedings under G. L. c. 40A, § 21, was not final for appeal purposes), and cases cited.[11] The 1966 decree was avowedly tentative and, upon remand, was vitiated as an estoppel in subsequent proceedings (e.g., E-3204) except as to issues expressly decided which the interest in the conservation of judicial resources precludes relitigating. Restatement 2d: Judgments, § 41, comment g (Tent. draft No. 1, 1973), and Reporter's Note, p. 12, citing *Lummus Co.* v. *Commonwealth Oil Ref. Co.* 297 F. 2d 80, 87-90 (2d Cir. 1961). *Sherman* v. *Jacobson,* 247 F. Supp. 261, 267-272 (S.D. N.Y. 1965). Cf. *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare,* 347 Mass. 24, 29, fn. 4 (1964).

---

appropriate amendment to the complaint similar to the amendment allowed in the declaratory relief proceeding. (The evidence in E-3204 was made applicable to E-1011 and E-2901.) See Mass. R.Civ.P. 1A, subpar. 2, 365 Mass. 731 (1974), citing Mass. R.Civ.P. 15, 365 Mass. 761 (1974).

[11] For a comparison of finality for purposes of res judicata with finality for purposes of appellate review, see Restatement 2d: Judgments, § 41, comment b (Tent. draft No. 1, 1973).

However, the applicability of the zoning freeze statute and whether the operative by-law was old V-E or V-E (1965) were not dealt with in the 1966 proceeding. To be sure, the premise of the litigation was the applicability of V-E (1965), but that premise as a basis for the 1966 decree without an express determination was no more than the law of the case; the second Superior Court judge who heard the case was free to reject that premise. "Any rule denying the right of a judge to revise or vacate the earlier decree of another in the same case would in practice run counter to the elementary principle that any action of the court short of final judgment or decree remains within the control of the court and is open to revision until final judgment or decree." Lummus, The "Law of the Case" in Massachusetts, 9 B. U. L. Rev. 225, 234 (1929). *Peterson* v. *Hopson,* 306 Mass. 597, 601-605 (1940). *Gleason* v. *Hardware Mut. Cas. Co.* 331 Mass. 703, 709-710 (1954). *Shine* v. *Campanella & Cardi Constr. Co.* 342 Mass. 150, 152-153 (1961). *Salter* v. *Scott,* 363 Mass. 396, 398-402 (1973).

The defendants' further complaint that the plaintiff was allowed to raise the issue of the zoning freeze late in the litigation, phrased in terms of laches, is in effect an attack on the allowance of the plaintiff's motion to amend its declaratory relief proceeding (E-3204) and on its introducing in the zoning appeals (E-1011 and E-2901 — both brought promptly) a new variation of a contention which was pleaded (see text to which fn. 10 is attached, and fn. 10). There is nothing in the record to indicate that the court abused its discretion in entertaining this issue; nor do the defendants make the argument in those terms. In any event, there is no finding of damage to the defendants and no evidence of damage was introduced. It is obvious that litigation would have ensued even if the zoning freeze statute had been raised originally, for the defendants are contesting its applicability in these very cases. See *Three Sons, Inc.* v. *Phoenix Ins. Co.* 357 Mass. 271, 278-279 (1970).

2. The defendants also argue that (e) even if applicable, the five-year zoning freeze from April 5, 1965, when the

458                                    3 Mass. App. Ct. 446

M. DeMatteo Construction Co. *v.* Board of Appeals of Hingham.

definitive subdivision plan was approved and endorsed, has expired and (b) the approval of the definitive subdivision plan was based on the condition that the plaintiff would apply for a permit under V-E (1965), by which the plaintiff was bound.

(a) We hold that the period of the zoning freeze stopped running when the building commissioner ordered the plaintiff to cease its excavation operations. The defendants can hardly complain that the plaintiff agreed to comply and to pursue an appeal under V-E (1965), which the zoning board even now asserts was the proper course. See *Sisters of the Holy Cross of Mass.* v. *Brookline,* 347 Mass. 486, 499 (1964). The plaintiff here has at least as strong a claim to relief from the statutory time limitation as the landowner in *Belfer* v. *Building Commr. of Boston,* 363 Mass. 439, 443-445 (1973), in which the "practical impediment" to the use of a variance during the statutory period was not created by action of city officials, who had indeed granted the variance, but rather (in contrast to these cases) by litigation initiated by private parties. The court cites *Tantimonaco* v. *Zoning Bd. of Review of Johnston,* 102 R. I. 594 (1967), in which "[t]he court relied on the common sense practical consideration" militating against a course of action under attack, until the doubts were resolved. See *Woods* v. *Newton,* 351 Mass. 98, 104 (1966) ; *McCarthy* v. *Board of Appeals of Ashland,* 354 Mass. 660 (1968) (directing — without discussing the point — on an appeal under G. L. c. 40A, § 21, the issuance of a building permit under an old zoning by-law, although the applicable five-year zoning freeze had expired). See also *Paul Livoli, Inc.* v. *Planning Bd. of Marlborough,* 347 Mass. 330, 335-336 (1964).

(b) The defendants point to certain evidence admitted at trial (and to other offered evidence excluded by the trial judge) indicating that the planning board's approval of the subdivision plan was on the condition and with the understanding that the plaintiff would apply for a permit under V-E (1965) for earth removal from the development and that the town would thus retain a measure of control

over the course of the development (see fn. 4). However, our reading of the Subdivision Control Law (G. L. c. 41, §§ 81K-81GG) in the light of *Selectmen of Pembroke* v. *R. & P. Realty Corp.* 348 Mass. 120 (1964), leads us to the conclusion that even if the approval were so conditioned, the defendants cannot now rely on that condition. It was neither endorsed on the plan nor set forth in a separate instrument referred to in the plan. See G. L. c. 41, §§ 81R, 81U.[12]

In the *Pembroke* case, *supra,* the planning board had approved a subdivision plan subject to eight conditions. However, the board failed to file a certificate of its decision with the town clerk as required by G. L. c. 41, § 81U, as then in effect, and as a result the plan was constructively approved as filed, without the conditions. The court held that, upon the recording of the town clerk's certificate of constructive approval together with the plan as originally filed, the recording controlled, and the landowner was not bound by the eight conditions though he knew that the planning board had approved the plan only on those conditions. The court characterized the Subdivision Control Law as "the specification of a procedure designed to provide definitive rights to accrue upon final action or inaction within stated times and for record notice of such action or inaction." *Pembroke* case, *supra,* at 127. We need not labor the difficulties and uncertainties which would result if it were not possible to rely on the official record when landowners are arranging for construction and financing

---

[12] In view of our disposition of this issue, we need not pass upon the defendants' contention that the plaintiff's failure to appeal the imposition of such a condition under G. L. c. 41, § 81BB, prevents the plaintiff from now asserting that the planning board lacked power under the Subdivision Control Law or because of the zoning freeze statute to require such a condition. See *Campanelli, Inc.* v. *Planning Bd. of Ipswich,* 358 Mass. 798 (1970), for this proposition. See also *Rounds* v. *Board of Water & Sewer Commrs. of Wilmington,* 347 Mass. 40, 45 (1964); *Costanza & Bertolino, Inc.* v. *Planning Bd. of No. Reading,* 360 Mass. 677, 681 (1971); *Marino* v. *Board of Appeal of Beverly,* 2 Mass. App. Ct. 859 (1974); Ryckman, Judicial and Administrative Review in Massachusetts Zoning and Subdivision Control Cases, 53 Mass. L. Q. 129, 157 (1968).

460                                                3 Mass. App. Ct. 446

M. DeMatteo Construction Co. *v.* Board of Appeals of Hingham.

and building inspectors are issuing building permits. See *Ellen M. Gifford Sheltering Home Corp.* v. *Board of Appeals of Wayland,* 349 Mass. 292, 294 (1965).

In these cases, the recorded action of the planning board contained no hint of such a condition as the defendants now seek to impose. See *McCarthy* v. *Board of Appeals of Ashland,* 354 Mass. at 662. Contrast *Rounds* v. *Board of Water & Sewer Commrs. of Wilmington,* 347 Mass. 40, 45 (1964); *Green* v. *Board of Appeal of Norwood,* 358 Mass. 253, 261-262 (1970). Contrast also *Hingham* v. *B. J. Pentabone, Inc.* 354 Mass. 537, 542 (1968).

However, as in the *Pembroke* case, there is no implication that the town and the planning board are without means of relief. Our holding does not affect the power of the planning board to "modify, amend or rescind its approval" of the subdivision plan under G. L. c. 41, § 81W. *Pembroke* case, *supra,* at 128. *Kay-Vee Realty Co. Inc.* v. *Town Clerk of Ludlow,* 355 Mass. 165, 170 (1969). See *Stoner* v. *Planning Bd. of Agawam,* 358 Mass. 709, 715 (1971). See also *Costanza & Bertolino, Inc.* v. *Planning Bd. of No. Reading,* 360 Mass. 677, 680-681 (1971).

3. The defendants argue finally[13] that the earth removal the plaintiff seeks is not permissible under old V-E because rather than constituting removal in connection with the construction of streets, it constitutes in fact the "[o]pening of [a] new sand and gravel pit[ ] which may be authorized by special permit of the Board of Appeals" (see fn. 2). This contention is open to the defendants. *Lexington* v. *Menotomy Trust Co.* 304 Mass. 283 (1939). *Seekonk* v. *John J. McHale & Sons, Inc.* 325 Mass. 271, 273-274 (1950). *Butler* v. *East Bridgewater,* 330 Mass. 33, 35-37 (1953).

Our examination of the record indicates that the evidence in the 1972 hearing was not specifically directed to this issue.[14] The June, 1972, hearing of the zoning appeals

---

[13] We have considered all the numerous other arguments made by the parties and have found that they are either without merit or have been rendered immaterial by the view we have taken of these cases.

[14] The trial judge in the 1966 proceedings found that "the imposition

(incorporating the evidence taken in the May, 1972, hearing in the declaratory relief proceeding) was primarily concerned with the four-phase program for the development of the lots as well as the roadways, on the basis of which the permit under V-E (1965) had been sought. And, further, the trial court excluded evidence offered by the zoning board to show that this program was designed to maximize earth removal — relevant to the issue whether, as the defendants contend, this was an earth removal operation in the guise of a subdivision development. In the declaratory relief proceeding, the sole witness was the president of the plaintiff corporation, and his testimony was not focused on this issue.

Moreover, it seems that the trial judge in all three cases was proceeding on the assumption that the approval of the subdivision by the planning board, as a matter of law, entitled the plaintiff unqualifiedly to excavate the streets shown on the plan without regard to whether it was in substance an earth removal operation requiring a permit.[15] This is contrary to the *Glacier Sand & Stone Co.* case, 362 Mass. 239, 241-242 (1972), in which the court held that, in spite of the approval of a subdivision plan, a landowner seeking to excavate in accordance with that plan was subject to the authority of a zoning by-law dealing with earth removal.

In these cases, whether the excavation operation may fairly be classed as a sand and gravel pit despite its confinement to areas designated in some formal sense as "streets" on the approved subdivision plan is a matter of fact which we are unable to determine. Apart from the questions of credibility which the evidence, much of it oral,

of reasonable conditions [on] the proposed operation . . . [could] guard against the project becoming merely a commercial gravel removal operation from its inception or thereafter." See fn. 5 and the text to which it is appended.

[15] The court ruled: "Bearing in mind the statutory scheme applicable to this situation, to require a permit for earth removal from the board of appeals after the planning board had approved a subdivision plan would virtually nullify the planning board's approval."

poses, we do not believe it proper in spite of the prolonged litigation to decide this matter on the basis of the allocation of the burden of proof — a complexity which none of the parties has argued. Accordingly we are constrained to narrow our holding in this case to a declaration that old V-E applies to the locus for a period of five years from April 5, 1965, the date of the approval and endorsement of the subdivision plan (plus the period from the order of the building commissioner stopping excavation to the date of the final judgment to be entered in the declaratory relief proceeding), and give the plaintiff and the building commissioner, the enforcing officer under the Hingham zoning by-law (see *Hingham* v. *B. J. Pentabone, Inc.* 354 Mass. 537, 538 [1968]), an opportunity to present further evidence and get an adjudication whether the plaintiff is within the exception ("when required in connection with the construction of a . . . street") or whether his proposed operation is a "sand and gravel pit" requiring a special permit under old V-E. See *Turgeon* v. *Turgeon,* 326 Mass. 384, 386 (1950).

### CONCLUSION

Accordingly, the final decrees in all three cases are vacated. In E-1011 and E-2901 judgments are to enter annulling the decision of the zoning board because V-E (1965), on which the decision was based, has no application. E-3204 is remanded for further proceedings in accordance with part three of this opinion. The interlocutory decree in E-3204 (see fn. 1) is affirmed.

*So ordered.*