In re Estate of A. F. Klink, Deceased.
Reconstruction Finance Corporation, Appellant, v.
Marion Klink, Administratrix of the Estate of
Alexander F. Klink, Deceased, Appellee.

Gen. No. 41,659.

610

Opinion filed June 9, 1941. Supplemental opinion filed and rehearing denied June 23, 1941, not published in full.

Lee Walker, M. O. Hoel, Walter Sczudlo and Robert G. Holbrook, all of Chicago, for appellant.

Urion, Bishop & Sladkey, of Chicago, for appellee; Howard F. Bishop, Jerome J. Sladkey and Robert F. Dewey, all of Chicago, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

A. F. Klink guaranteed payment of an indebtedness of Mabel A. Bohnet to the Central Trust Company of Illinois; the indebtedness was not paid; Klink having died, a claim was made against his estate in the probate court which was allowed for $3,993.40; the administratrix appealed to the circuit court where an order was entered by the court disallowing the claim, and plaintiff appeals to this court.

A summary of the facts is necessary to an understanding of the points made in the briefs.

October 28, 1929, Mabel A. Bohnet wished to obtain a loan from the Central Trust Company of Illinois, which requested a guaranty agreement. Such an agreement was produced, signed by A. F. Klink, now deceased. In it he agreed to pay any or all the indebtedness of Mabel A. Bohnet to the bank then due or thereafter to become due promptly "upon advice from the bank that the same are due," to the extent of $3,800 with interest after maturity at 7 per cent per annum. It further provided that the bank might receive and hold security from the debtor for the payment of any of her obligations or might release or surrender such security at any time in the discretion of the bank and, at its sole discretion, might also grant renewals and extensions of time on any of the debtor's obligations,

taking renewal notes or other contracts to evidence the same for such periods of time as the bank deemed advisable, without notice to or consent of the guarantor and without impairing his obligations under the guaranty agreement. The guarantor also agreed that the bank need not make demand, protest, "notice of default" in respect of any of the obligations guaranteed by the guarantor, and if any of the obligations are payable on demand the bank in its sole and arbitrary discretion could determine the period which should elapse prior to the making of demand.

On the same day Mabel A. Bohnet procured a loan from the bank of $3,800 and executed her demand note to evidence this; the loan was renewed and a renewal demand note was executed on October 4, 1930; thereafter $50 was paid on account of said indebtedness, leaving a balance unpaid of $3,750.

July 25, 1931, the Central Trust Company of Illinois and the Chicago Trust Company consolidated, forming the Central Republic Bank and Trust Company; the consolidated bank renewed the Bohnet loan December 21, 1931, taking her renewal note for $3,750.

June 27, 1932, this bank procured a large loan from the present claimant, Reconstruction Finance Corporation, delivering as security its assets, including the Bohnet note; at that time the bank retained physical possession of the guaranty agreement signed by A. F. Klink; the bank continued to liquidate the items of collateral pledged by it, including the Bohnet note, until a receiver was appointed for the bank about December 20, 1934. Mabel Bohnet paid $700 on her note and the bank renewed the loan to her and accepted a renewal demand note in the principal sum of $3,050, evidencing the unpaid balance. This renewal note was delivered to the Reconstruction Finance Corporation and substituted for the former note as part of the collateral held by the Reconstruction Finance Corporation. Demands for payment of the note were made on Mabel

Bohnet beginning with the year 1934 and continuing thereafter.

Prior to the appointment of a receiver for the bank Klink's guaranty was delivered to the present claimant, which has retained possession of it ever since. June 21, 1937, the Reconstruction Finance Corporation sent a letter which was received by Klink, advising him that it was the holder of the demand note for $3,050 signed by Mabel Bohnet and guaranteed by Klink, on which interest was delinquent; that the debtor had stated she was unable to pay the note. The letter requested Klink to call at the office of the Reconstruction Finance Corporation, the claimant, or write telling what his plans were "regarding the liquidation of this obligation."

November 25, 1937, Klink died. Albers, who had been appointed receiver for the Central Republic Bank and Trust Company, assigned on February 1, 1938, to the present claimant all his right and interest under the guaranty agreement and all sums of money that might be had or obtained thereon.

The claim filed in the probate court in the estate of A. F. Klink, deceased, stated that the claimant was the legal holder of the guaranty agreement, was entitled to the benefits and any proceeds arising therefrom and to payment of the indebtedness of Mabel Bohnet by the estate of the decedent, in accordance with the terms of his guaranty. This claim was filed February 4, 1938, and, as we have said, was there allowed.

Defendant's principal point, argued at some length, is that the guaranty provision must be strictly construed in his favor, citing many cases so holding, and that where notice is required by the guaranty as a condition precedent to liability, strict compliance with this condition is required. It is stated that no notice of default was given by the Central Republic Bank and Trust Company to Mr. Klink, the guarantor, or his administratrix at any time; that the letter written by

the claimant in June 1937, to Mr. Klink was more than 4½ years after default by the principal and did not constitute a notice as required by the terms of the guaranty. Among the cases cited which it is said support defendant's position is *Eaton & Prince Co. v. Foster*, 66 Ill. App. 486. Examination of the opinion in that case discloses that the question of notice was not involved, the court there holding the guarantor was not liable because the sum of $50 which was to have been paid to the guarantor in consideration of the execution of the guaranty was not paid. *Goldenberg v. Myers*, 202 Ill. App. 340, is not in point for in that case the guarantee to pay rent was expressly stated to be "upon condition" that "notice is to be given" the guarantor within 10 days after the failure of the lessees to comply with the terms of the lease.

Referring to the terms of the guaranty in the instant case, we are of the opinion it contains no language indicating the guaranty was executed upon condition that notice should be given. The only language referring to notice is contained in the provision where the guarantor agrees promptly to pay the indebtedness "upon advice from the bank that the same are due," and moreover that the bank "need not . . . make or give presentment, demand, protest, notice of default . . . of any of the obligations hereby guaranteed by the undersigned." And moreover, if any of the obligations are payable on demand the bank may in its sole discretion "determine the period which shall elapse prior to the making of demand."

In *Mamerow v. National Lead Co.*, 206 Ill. 626, 636–637, which involved a contract of guaranty where it was alleged as a defense that timely notice of the default of the principal debtor was not given the guarantors in that notice was not given for about a year and a half after the failure of the principal debtor, it was held (citing *Taussig v. Reid*, 145 Ill. 488) that the failure to give notice can only be availed of when

it has been made to appear that the guarantor has suffered loss by such failure; that the question of notice or want of notice was a matter of defense. To the same effect was the holding in *Swisher v. Deering,* 204 Ill. 203. In that case there was no effort made by the guarantor to show any damage by reason of a failure to notify him, and the judgment against him was affirmed. *Heeringa v. Ortlepp,* 167 Ill. App. 586, involved a written guaranty of an account which contained the provision ''In case of non-payment I want to be notified right away.'' It was held that this was a continuing guaranty and the guarantor must show that the failure to receive notice of default caused loss or damage to him, and that without such proof judgment would be entered against the guarantor. 24 Am. Jur., Guaranty, § 107, contains a statement of the law to the same effect, namely, that the failure to give notice would only release the guarantor to the extent he had been damaged by such failure, citing a large number of cases. In the instant case defendant introduced no evidence. We are therefore of the opinion that plaintiff made a *prima facie* case by proof of the guaranty agreement, the making of the loan to Mabel Bohnet, the nonpayment by her, and the assignment to claimant of the money due.

Defendant says this is a special guaranty, and cites cases which hold that a special guaranty is not assignable. It is not necessary to pass upon the character of this guaranty, as to whether it is special or otherwise, for the assignment to claimant was an assignment of the money due under the guaranty agreement. The language of the assignment clearly bears this construction. It assigns the right to demand and receive and take all necessary steps to recover the money due and to do all acts necessary to collect any money then due or to become due. It appoints the claimant as the attorney of the receiver of the bank to take all steps necessary to collect the money. Claims for money arising by virtue of past extensions of credit made in

reliance upon a continuing guaranty can be assigned. *Peoples Nat. Bank v. Cosden,* 283 Ill. App. 31.

Moreover, the claim filed in the probate court against the Klink estate was for a specified sum, with interest. It recites the execution of the guaranty and that the claimant is entitled, by virtue of an assignment to it, to all proceeds and benefits arising therefrom.

There is no merit in the suggestion that the death of Klink terminated all liability under the guaranty. The loan to Mabel Bohnet was made upon reliance on the guaranty. The guarantor agreed that cancellation of the agreement would not affect his liability, but on the contrary he should remain liable for such indebtedness as there might be at the time of a receipt by the bank and indorsement of notice of cancellation. Even without such a provision a guarantor cannot revoke his guaranty and release himself of liabilities incurred before such revocation. *Mamerow v. National Lead Co.,* 206 Ill. 626, 634–635.

There is force in claimant's argument that even if it was necessary to establish a *prima facie* case to prove notice to the guarantor, the giving of such notice was proved. It is admitted that claimant sent a letter to Klink which was received by him, stating the facts with reference to the default in the Bohnet note and asking Klink to make known his plans for "the liquidation of this obligation." Bouvier's Law Dictionary defines the word "liquidation" as "to pay or settle." Also, examination of the latter part of the agreement of guaranty indicates the bank was under no obligation to give notice to the guarantor of any default of the principal debtor.

We hold that claimant's proof made a *prima facie* case in its favor and, as no evidence in defense was presented, it was entitled to judgment.

For the reasons indicated the judgment of the circuit court is reversed. We cannot enter judgment for the amount allowed in the probate court, with interest,

616

as we cannot allow interest on interest. We enter judgment for the claimant in this court for $3,889.70. We have followed the computation of witness Cole, who testified that the amount of the claim, with interest, on September 26, 1940, was $4,231.87; allowing a credit of $472.95—the surrender value of an insurance policy—leaves $3,758.92; adding 5 per cent on this from that date to the present time gives $3,889.70.

*Reversed and judgment here.*

O'CONNOR, P. J., and MATCHETT, J., concur.