Mitacon **ANSTALT** and Societe Choron Internationale

v.

**F.I.A. INSURANCE COMPANY,** Northeastern Fire Insurance Company of Pennsylvania, and Union Indemnity Insurance Company of New York.

**NORTHEASTERN FIRE INSURANCE COMPANY OF PENNSYLVANIA,** Defendant-Third Party Plaintiff,

v.

**BONANZA REFINING INTERNATIONAL COMPANY,** Third Party Defendant.

and

**F.I.A. INSURANCE COMPANY,** Defendant-Third Party Plaintiff,

v.

**BONANZA REFINING INTERNATIONAL COMPANY and Community Funeral Home Inc.,** Third Party Defendant.

**Appeal of FIRST INDEMNITY OF AMERICA INSURANCE COMPANY.**

**No. 83–5927.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 19, 1984.

Decided Dec. 6, 1984.

---

176

John J. Rush, John J. Rush, P.A., East Orange, N.J., Don H. Pace, Baker & Hostetler, Cleveland, Ohio, for appellant.

Carl Greenberg, David J. Reich, Porzio, Bromberg & Newman, Morristown, N.J., for Mitacon Anstaldt et al.

Before SLOVITER and BECKER, Circuit Judges, and FULLAM, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

In this diversity action we must predict whether, under New Jersey law, a surety which guaranteed the performance of a seller of goods by issuing a bond for the benefit of the buyer remains liable when the parties to the underlying contract substitute a different buyer. The district court entered summary judgment in favor of the buyer on the issue of liability.

### I.

On August 5, 1980, Bonanza Refining International Company (Brico), a Texas corporation, contracted to sell to Societe Choron Internationale (Choron), a French corporation, 20,000 boxes (20 million packs) of Benson & Hedges cigarettes, with delivery to a bonded warehouse Southampton, England. The contract required that Brico, the seller, would supply Choron, the buyer, with a performance bond and Choron would give Brico a check for $40,000 as a contract guaranty and open a letter of credit for $6,720,000 in favor of Brico to cover the purchase price of the cigarettes. Brico, the seller, purchased the required performance bond guaranteeing delivery of

---

* Hon. John P. Fullam, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

the cigarettes from First Indemnity of America Insurance Company (F.I.A.), the defendant in this action. This bond, No. 1296, was in the sum of $201,600 and expressly covered ICL Contract No. 3, the Brico/Choron contract.

Choron issued the $40,000 check to Brico but was unable to secure the letter of credit. Ultimately, through arrangements not relevant to the issue before us, Choron interested Mitacon Anstalt (Mitacon), a Liechtenstein corporation, in participating in the transaction as buyer. These arrangements were made with the active participation of Brico. Choron and Mitacon executed a contract in September, 1980 for Choron to sell to Mitacon the 20,000 boxes of cigarettes it was obliged to buy from Brico, which paralleled the terms of the August contract between Brico and Choron. The written Choron/Mitacon contract provided that before the letter of credit for Mitacon would issue, Choron would transfer the performance bond to Mitacon. The contract stated, "Said Bond has already been prepared byFIA Insc. Co, Has received No. 1296 and approved byFIA".[sic] App. at 285a.

Thereafter, on September 17, 1980, the original Brico/Choron contract was modified to substitute Mitacon for Choron as the purchaser, but otherwise carried the same contract number and substantially the same terms as the original Brico/Choron contract. Brico's obligation to sell the cigarettes did not change in any respect, except as to the identity of the buyer. The contract expressly "incorporated here in by reference ... original Insurance Company F.I.A. performance Bond No: 1296 dated August 5th, 1980 issued in favour of CHORON INTERNATIONAL ..." and provided that ICL 3 [the original Brico/Choron contract] should be amended as follows: "It is further agreed that at the request of buyer [Mitacon] BRICO HAS OFFERED SAID F.I.A BOND NO: 1296 AND BUYER HAS ACCEPTED THE SAME, AMENDED AS SHOWN IN F.I.A letterhead." [sic] App. at 308a. Brico returned Choron's $40,000 check after receiving a similar payment from Mitacon. Mitacon's representative then proceeded to obtain customers for the cigarettes and to obtain the necessary letter of credit in favor of Brico.

After Mitacon had performed all its obligations under the contract, Brico failed to deliver the cigarettes, and Mitacon was unable to obtain cigarettes either from Brico or another supplier. Mitacon then demanded payment from F.I.A. on the performance bond it had issued guaranteeing Brico's delivery of the cigarettes. F.I.A. refused, taking the position that its obligation to Choron had terminated and that it had undertaken no obligation to Mitacon. Mitacon and Choron filed suit against F.I.A., a New Jersey corporation with its principal place of business in that state, alleging breach of F.I.A.'s obligation on the bond. F.I.A. filed a third party claim against Brico, which has not been located and was not served.[1]

The district court entered partial summary judgment on the issue of liability in favor of plaintiffs Mitacon and Choron against F.I.A. and held a bench trial on the issue of damages. Thereafter, the court reaffirmed its judgment on liability and entered judgment in favor of plaintiffs in the amount of the bond, $201,600. F.I.A. appeals.

## II.

On appeal, F.I.A. does not challenge the amount of damages but argues that the district court erred on the liability question. F.I.A. views as three separate and unrelated contracts the Choron/Brico agreement, the Choron/Mitacon agreement, and the Mitacon/Brico agreement. It argues that its bond pertained only to the Choron/Brico agreement, and that when Choron was unable to produce the letter of credit, Brico abandoned the contract with Choron and,

1. Other parties, such as reinsurers, were named in the litigation, but they have no relevance to the issue before us.

as a consequence, F.I.A.'s obligation as surety ended.

The district court considered the contract naming Mitacon as the buyer as "the same contract of sale" as the one naming Choron as the buyer, App. at 8a, and that the transaction was one in which Choron "the purchaser [was] bringing in an additional purchaser of cigarettes [Mitacon] to take some of the product." App. at 9a–10a.

■ The parties agree that a surety's obligation is no greater than that of its principal, see *Painter's Local Union 171 v. William & Kelly, Inc.*, 605 F.2d 535, 539 (10th Cir.1979), and that, if Brico has abandoned the contract, F.I.A.'s obligation under the performance bond would have terminated. When rescission or abandonment of a contract is to be implied from the conduct of the parties, the actions must be positive and unequivocal. *S.S. Silberblatt, Inc. v. Seaboard Surety Company,* 417 F.2d 1043, 1054 (8th Cir.1969).

■ There is no such evidence in this case. To the contrary, there was testimony that Brico participated in the negotiations between Choron and Mitacon, and the district court found that Mitacon became the purchaser of the cigarettes "with the active participation of BRICO." App. at 313a. Moreover, Brico's conduct in contracting in September with Mitacon under the same contract number and terms as it had contracted with Choron are inconsistent with any abandonment or rescission of the earlier contract. Thus, we agree with the district court, which rejected F.I.A.'s argument that Brico abandoned the Brico/Choron contract.

### III.

F.I.A. further argues that as a matter of law it cannot be held liable to Mitacon, the substituted buyer, because neither Brico, the original seller, nor Choron, the original buyer, could unilaterally assign the bond. It stresses that under the language of the bond, it undertook only to guaranty the performance of Brico to Choron. The bond provided:

BONANZA REFINING INTERNATIONAL Co. called the Principal and F.I.A. INSURANCE COMPANY, a New Jersey Corporation, as SURETY, *are held and firmly bound unto Cloron [sic] International CORP. as OBLIGEE*, in the sum of TWO HUNDRED ONE THOUSAND SIX HUNDRED AND NO/100 U.S. DOLLARS ($201,-600.00).

WHEREAS, the Principal has by written agreement dated August 5, 1980, ENTERED INTO A Contract with the Obligee to supply cigarettes in accordance with contract between CLORON [sic] INTERNATIONAL CORP. and BONANZA REFINING INTERNATIONAL Co. which contract is by reference made a part hereof and is hereafter referred to as the contract.

App. at 261a. F.I.A. maintains that since the bond specifically names Choron as the obligee and incorporates by reference only the Choron/Brico contract, it cannot be held liable to a new obligee without having consented to the change.

As a court sitting in diversity, we have the duty to predict how the New Jersey Supreme Court would decide this issue. There is no New Jersey case directly on point. However, the law in other jurisdictions permits the obligee to assign a guaranty when there is no express prohibition of assignment and the assignment does not increase the guarantor's risk.

Thus for example, in *Ampex Credit Corp. v. Bateman*, 554 F.2d 750 (5th Cir. 1977), the defendant guaranteed payment by the buyers due under a conditional sales contract. The seller's interest in the conditional sales contract was assigned to Ampex which sued to enforce the guaranty when the buyers failed to pay. The court, applying Georgia law, rejected the guarantor's argument that the guaranty could not be assigned without his consent. Instead the court found that there was "no evidence that the guarantors intended their obligations to run to the named obligees personally rather than to them as creditors

under the conditional sales contract." *Id.* at 754.

Similarly, the Seventh Circuit was required to determine whether under Illinois law a guaranty of a customer's payment to a specified corporation would survive the corporation's reorganization. In determining that it would, and that the guarantor remained liable to the successor in interest of the creditor, the court held that it would not mechanically apply the general rule of nonassignability of guarantees. *Essex International, Inc. v. Clamage,* 440 F.2d 547 (7th Cir.1971). Instead, the court stated that "the critical issue which must be determined in every case, regardless of the manner in which the assignment of the guaranty was effected, is whether the creditor-guarantee has attempted to impose on the guarantor an obligation which differs materially from that which he undertook to perform." *Id.* at 551. The court concluded that if the undertaking of the guarantor is not materially altered there is no reason to discharge the guarantor. *See also In Re Klink's Estate,* 310 Ill.App. 609, 35 N.E.2d 684 (1941). *Accord, Ray v. Spencer,* 208 S.W.2d 103 (Tex.Civ.App.1947); *Thorpe v. Story,* 10 Cal.2d 104, 73 P.2d 1194 (1937) (in bank).

Although no New Jersey cases have been found which permitted assignment of the guaranty, recent cases suggest that New Jersey courts are giving a less technical interpretation to certain provisions of the security bond. For example, in *Amelco Window Corp. v. Federal Insurance Company,* 127 N.J.Super. 342, 348, 317 A.2d 398, 402 (1974), the court held that where a surety had bonded the performance of the general contractor, and where the prime contract required the general contractor to pay for all labor and materials needed to complete the work, the surety was required to pay the subcontractor. Although the subcontractor had not been listed as an obligee, the court viewed it as a third party beneficiary under the bond and permitted it to proceed against the surety.

Last year, the New Jersey Superior Court, Appellate Division, had occasion to consider the applicable law regarding the scope of a surety's undertaking. In *Stano v. Soldo Construction Co.,* 187 N.J.Super. 524, 455 A.2d 541 (App.Div.1983), it held that a surety's offer to guarantee the performance of a subcontractor met the statutory requirement for bidding on public contracts even though the surety's promise was not directed to a particular bidder or to a particular subcontract. The court stated, "A surety company's sole concern when bonding a subcontractor is with the reliability and financial solvency of that subcontractor; it is irrelevant to the surety who receives its performance guarantee." *Id.* at 537, 455 A.2d at 547. In reaching that conclusion, the court reasoned that if a surety is willing to bond against certain risks, a change that has no effect on those risks should have no effect on the surety's responsibility.

Notwithstanding these cases, F.I.A. argues that New Jersey would apply the old rule of *strictissimi juris* which excuses the surety when even a minor change is made in the contract. New Jersey does continue to follow the principle that an uncompensated guarantor will be held only to the strict construction of the terms of the bond. Thus, in *Peoples National Bank of N.J. v. Fowler,* 73 N.J. 88, 372 A.2d 1096, *cert. denied,* 434 U.S. 858, 98 S.Ct. 182, 54 L.Ed.2d 131 (1977), the New Jersey Supreme Court held that an uncompensated guarantor's obligation which contemplated that a bank loan would be made in accordance with the law was discharged when the bank loan violated the federal margin requirements. However, the *Fowler* court approvingly cited to the Restatement of Security § 129 (1941) which distinguishes between compensated and uncompensated sureties, and which provides that when the time for payment of a debt has been extended, the compensated surety will be discharged only to the extent that it has been harmed by the extension. *See Fowler,* 73 N.J. at 101 n. 9, 372 A.2d at 1103 n. 9.

Another section of the Restatement of Security is closely applicable to the issue at bar. In Section 128, approvingly cited in

*State of N.J. v. Weissenburger,* 189 N.J.Super. 172, 176, 459 A.2d 693, 696 (App.Div. 1983), the Restatement provides that:

> Where, without the surety's consent, the principal and the creditor *modify their contract* otherwise than by extension of time of payment
>
> .     .     .     .     .
>
> (b) *the compensated surety is*
>
>> (i) discharged if the modification materially increases his risk, and
>>
>> (ii) *not discharged if the risk is not materially increased,* but his obligation is reduced to the extent of loss due to the modification.

(emphasis added).

This approach which permits the discharge of a surety only when there have been material alterations in the underlying contract and when the surety can show injury, has also been adopted in 10 Williston on Contracts §§ 1239–1242 (3d ed. 1967), and is in accord with recent case law in other jurisdictions. *See, e.g., Town of Hingham v. Pentabone,* 354 Mass. 537, 238 N.E.2d 534 (1968); *Hunt v. Bankers & Shippers Ins. Co.,* 60 A.D.2d 781, 400 N.Y. S.2d 645 (1977) (both holding that changes in contracts which do not materially alter the surety's exposure will not relieve it from liability); *Central Louisiana Electric Co. v. Giant Enterprises, Inc.,* 371 So.2d 641 (La.Ct.App.1979), *cert. denied,* 375 So.2d 646 (La.1979) (holding that a compensated surety will be released because of an alteration of the contract only if it is material and prejudices the rights of the surety).

In light of recent New Jersey cases and the authority upon which they rely, particularly the Restatement of Security, we predict that the New Jersey Supreme Court would hold that a compensated surety will not be discharged from its obligation because of an alteration in the underlying contract that is not material and that does not increase the surety's risk or otherwise cause it injury. Furthermore, in light of the New Jersey statute which permits as-

signment of a chose in action unless enjoined by the contract from which it arose, *see* N.J.Stat.Ann. § 2A:25–1 (West 1952), we predict that New Jersey would permit the obligee to assign a surety's bond if the assignment does not prejudice the surety.[2]

■ The facts in the case before us present a situation not hitherto presented by any case which we have found. Ordinarily, the obligation bonded is payment by the buyer. In this case, the obligation bonded was that of a seller to perform by delivering the product as agreed upon in the underlying contract. We see no reason why the same legal principles do not apply. The district court found that the substitution of Mitacon as a purchaser was not a material alteration which increased F.I.A.'s risk on its performance bond or which otherwise prejudiced F.I.A. App. at 316a. F.I.A. does not claim any specific prejudice. Since F.I.A. has not pointed to any clearly erroneous finding by the district court, and we find no error in the manner in which the district court applied the law, we will affirm its grant of summary judgment to Mitacon.

### IV.

■ In summary, we hold that New Jersey would not follow the law of *strictissimi juris* and permit a compensated surety to be discharged from its obligation merely because of an alteration in the underlying contract which substituted one buyer for another. We predict that the New Jersey Supreme Court would hold that where an assignment of a bond by the obligee in such a situation is an immaterial change that does not prejudice the surety or alter its risk, the surety is obligated to pay upon the default of its principal.

Accordingly, we will affirm the judgment of the district court.

---

**2.** The bond in this case has some of the attributes of a surety bond and other attributes of a guaranty. For this purpose, they are synony-

mous. *See Peoples National Bank of New Jersey v. Fowler,* 73 N.J. at 99 n. 8, 372 A.2d at 1102 n. 8.